IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          )
                                  )
            vs.                   )      Criminal No. 03-259
                                  )      See Civil Action No. 09-1112
ANTONIO STITT,                    )
                                  )
            Defendant/petitioner. )

FINDINGS OF FACT AND CONCLUSIONS OF LAW

BLOCH, District, J.

      The Petitioner, Antonio Stitt, on August 20, 2009, filed a
pro se "Motion to Vacate, Set Aside, or Correct the Sentence"
(Doc. No. 176), in the above captioned case.  On October 26, 2009,
the Government filed a response (Doc. No. 179), and Petitioner has
filed multiple responses and affidavits in reply.  (Doc. Nos. 180,
183, 185, 190).  Petitioner's trial counsel also filed an
affidavit upon order of this Court.  (Doc. No. 189).

      Petitioner's motion alleges that he received ineffective
assistance of counsel in this case.  Specifically, he alleges that
his counsel, R. Damien Schorr, misled him by representing that a
motion to suppress wiretap evidence in which he had joined in the
criminal proceedings against him had been denied, and that, but
for this misstatement of fact, he would not have pled guilty.  The
Court granted Petitioner an evidentiary hearing, which was held on
November 18, 2010.  Petitioner appeared pro se, and both he and

1

his trial counsel testified.

Upon consideration of the evidence presented in the parties' filings, as well as the testimony and evidence presented at the evidentiary hearing, this Court hereby enters the following findings of fact and conclusions of law this 26th day of April, 2011.

## I.   **Findings of Fact**

1.   On October 28, 2003, an indictment was returned by a grand jury sitting in the Western District of Pennsylvania charging Petitioner, among others, with one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, and one count of attempting to distribute and possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, both in violation of 21 U.S.C. § 846.

2.   The case was prosecuted by Assistant United States Attorney ("AUSA") Constance Bowden.   Petitioner, at all times relevant to his Motion, was represented by his counsel, R. Damien Schorr.

3.   On October 3, 2003, AUSA Bowden submitted to the United States District Court for this district, at Misc. No. 03-541, an application for a wiretap on a cellular telephone alleged to be

2

used by Petitioner and others in furtherance of a criminal conspiracy to distribute controlled substances. (Doc. No. 59, Ex. 1 in this case ("Wiretap Application")).

4. Attached to this application was an October 3, 2003 memorandum of authorization signed by Deputy Assistant Attorney General ("DAAG"), Criminal Division, John G. Malcolm, together with a copy of an order signed by then-Attorney General John Ashcroft, Order No. 2407-2001, designating any DAAG in the Criminal Division as an official empowered to authorize such applications. (Id.). However, this memorandum did not authorize the wiretap in this case, but rather a wiretap in a separate, unrelated case involving the interception of communications from cellular telephones subscribed to by Jeremy Staffeldt and Jay Smith, both of whom resided in Arizona and neither of whom was involved in any way in the present case.

5. The authorization memorandum for the wiretap in this case (Doc. No. 59, Ex. 4), which had been intended to be attached to the Wiretap Application, was instead attached to the wiretap application in the case involving Staffeldt and Smith. This memorandum was also signed by John Malcolm and accompanied by a copy of the Attorney General's order of special designation. In other words, the authorization memoranda in these two separate, unrelated cases crossed paths, and each ended up in the wrong place.

6.   Although, as stated, the wrong memorandum was attached to the Wiretap Application, paragraph 2 of the application correctly states that authorization for the application was given by John G. Malcolm, Deputy Assistant Attorney General for the Criminal Division, having been specifically designated by the Attorney General.  This paragraph further states that Order 2407-2001 was attached to the application as Exhibit A and that Malcolm's authorization memorandum was attached as Exhibit B.

7.   AUSA Bowden was unaware that the incorrect memorandum had been attached to the application and did not inform the judge reviewing the application of this error.  Accordingly, the reviewing judge issued an order authorizing the requested wiretap. (Doc. Nos. 176, Ex. A, and 59, Ex. 1).

8.   The error was brought to AUSA Bowden's attention by Assistant Federal Public Defender Marketa Sims, who represented Taylin Cooper, a co-defendant in this case.  After having been informed of the error by defense counsel, AUSA Bowden obtained the correct memorandum, and verified that the memorandum had been signed by an appropriate official prior to the submission of the application.  The correct authorization memorandum was furnished to defense counsel on or about November 13, 2003.

9.   On April 28, 2004, co-defendant Cooper filed a motion to suppress wiretap evidence based, in part, on the above mentioned error in attaching the wrong authorization memorandum to the

4

Wiretap Application. (Doc. Nos. 58, 59). On that same date, Petitioner, through his counsel, joined in this motion. (Doc. No. 53). A suppression hearing concerning the motion was initially scheduled for May 27, 2004. On motions by Petitioner and co-defendant Cooper, the suppression hearing was rescheduled for June 7, 2004. (Doc. No. 65). Following a motion to reconsider filed by counsel for Cooper, the suppression hearing was again postponed until July 7, 2004. (Doc. No. 70).

10. On June 9, 2004, co-defendant Cooper changed his plea to a plea of guilty. (Doc. No. 75).

11. On or about June 24, 2004, while the suppression motion was pending, Petitioner and his counsel met to discuss the option of pleading guilty to the charges against him in this case. Petitioner claims that, during this conversation, Attorney Schorr advised him that the motion to suppress wiretap evidence he had joined had been denied by this Court. He further claims that the disposition of this motion was the reason he pled guilty rather than proceed to trial. To the contrary, Schorr testified that he never told Petitioner that the motion to suppress wiretap evidence had been denied. In fact, he testified that neither the motion nor its disposition was discussed in regard to Petitioner's decision to plead guilty at all. He testified that other reasons, further discussed below, predominated his discussions with Petitioner regarding his decision whether to plead guilty. After

5

weighing the evidence presented at the hearing, the Court finds

the testimony of Attorney Schorr to be credible and that of

Petitioner to lack credibility.

12. In so finding, the Court notes that Schorr was a neutral

witness with no direct reason for misrepresenting the nature of

his discussions with Petitioner. His testimony was clear and

specific and supported by a June 24, 2004 letter from him to

Petitioner memorializing the issues discussed. (Govt. Ex. 7 at

the hearing on the present Motion).

13. Specifically, Schorr's letter advised Petitioner, in

response to their conversation earlier that day, that United

States v. Shoupe, 988 F.2d 440 (3d Cir. 1993), cannot be used to

depart from a mandatory minimum sentence and provided supporting

case law. The letter further discussed Schorr's efforts to "be

aggressive with the prosecutor" at Petitioner's request. The

letter explained that the Government agreed to charge Petitioner

with only one, rather than two prior drug convictions, which

eliminated the risk of a mandatory life sentence.[1] It further

explained that the Government agreed not to charge Petitioner with

---

[1]    The Presentence Investigation Report (PIR) confirms that
Petitioner had two prior adult convictions for felony drug
offenses at Case No. 199706191 in the Allegheny County Court of
Common Pleas and Case No. 98-15-1 in the United States District
Court for the Northern District of West Virginia. The information
filed pursuant to 21 U.S.C. § 851 lists only the federal
conviction as a prior felony drug offense, and Petitioner was
sentenced accordingly.

any firearms violations, eliminating a potential mandatory 30-year sentence. It stated that the prosecutor would not negotiate a lower drug quantity. Attorney Schorr concluded the letter by advising Petitioner, "in the strongest possible terms," to accept the Government's plea offer, as the alternative was life imprisonment.

14. Petitioner, on the other hand, did not raise the issue that he was misinformed as to the disposition of the suppression motion until five years after his sentencing, which is inconsistent with the singular importance he now attaches to that motion. Further, he has an obvious interest in this matter, and his testimony seemed tailored to support that interest. Moreover, his testimony was vague and lacking in detail. Finally, his testimony is inconsistent with the June 24 letter from Attorney Schorr which discussed other issues related to his plea discussions which appear to have been far more significant to Petitioner's decision to plead guilty, without any mention of discussions regarding the status of the suppression motion. Petitioner's vague, self-serving, and uncorroborated testimony is particularly unpersuasive considering the rather extreme allegation raised by Petitioner – that his attorney bald-faced lied to him about the disposition of an important motion.

15. Accordingly, the Court adopts Attorney Schorr's account of the June 24 conversation, and finds that the motion to suppress

wiretap evidence was not discussed in any way between Petitioner
and Schorr in discussions regarding Petitioner's decision to
change his plea to a plea of guilty, and that Schorr did not tell
Petitioner that the motion to suppress had been denied or disposed
of by the Court in any way.  Further, the Court finds that other
issues, including the issue of prior convictions, potential
firearms violations, and the possibility of a mandatory life
sentence, were significant in this discussion and in Petitioner's
decision to plead guilty.

16.  Shortly after this conversation, on June 28, 2004,
Attorney Schorr advised the Court that Petitioner would change his
plea to a plea of guilty.  (Doc. No. 79).

17.  On July 7, 2004, before any hearing on, or disposition
of, the pending motion to suppress wiretap evidence, Petitioner
pled guilty to Count One of the indictment and acknowledged
responsibility for the conduct charged in Count Two.  (Doc. No.
87).  Accordingly, since all defendants had pled guilty, the
suppression motion was dismissed as moot.

18.  On October 7, 2004, this Court sentenced Petitioner to a
term of 262 months' imprisonment and 10 years' supervised release.
(Doc. No. 108).

19.  Petitioner filed a timely notice of appeal with the
United States Court of Appeals for the Third Circuit on or about
October 15, 2004. (Doc. No. 111).  While that appeal was pending,

the United States Supreme Court announced its decision in United States v. Booker, 543 U.S. 220 (2005). Petitioner's motion for summary remand for re-sentencing in light of Booker was granted on May 18, 2005. (Doc. No. 122 ). On April 27, 2006, this Court re-sentenced Petitioner to 240 months' imprisonment, which was the statutory minimum sentence. In all other respects, Petitioner's original sentence remained in full force and effect. (Doc. No. 153).

20. Petitioner timely appealed this sentence by notice dated May 4, 2006. (Doc. No. 155). In an opinion dated May 30, 2008, the Third Circuit affirmed Petitioner's sentence and the judgment of the District Court. (Doc. No. 175).

21. At no time during either appeal was the issue of whether the evidence obtained via the Wiretap Application should be suppressed ever raised, nor did Petitioner ever argue that he had been misled regarding the disposition of the suppression motion.

22. On June 26, 2006, the Ninth Circuit Court of Appeals upheld the suppression of the wiretap evidence in the factually analogous case in Arizona involving Jeremy Staffeldt and Jay Smith. See United States v. Staffeldt, 451 F.3d 578 (9th Cir. 2006). This was the case in which the wiretap authorization memorandum intended for the Wiretap Application in this case had been filed, and the case for which the authorization memorandum attached to the Wiretap Application had been prepared.

23.  On August 20, 2009, Petitioner, acting pro se, filed the present motion pursuant to 28 U.S.C. § 2255.

## II.  Conclusions of Law

1.  Pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972); United States v. Otero, 502 F.3d 331, 334 (3d Cir. 2007).  However, even a pro se plaintiff must be able to prove a "set of facts in support of his claim which would entitle him to relief."  Haines, 404 U.S. at 520-21 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

2.  Petitioner brings his pro se motion pursuant to Section 2255.  This statute permits a "prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States...[to] move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  Petitioner must specify all available grounds for relief and state the facts supporting each ground.  R. Governing § 2255 Proceedings 2.

3.  Pursuant to Section 2255(b), the Court is to grant Petitioner an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  As noted, the Court, finding the motion and records to be inconclusive, held such a hearing on

November 18, 2010.

4. In his motion, Petitioner claims that he was denied his Sixth Amendment right to effective assistance of counsel. A petitioner seeking relief under Section 2255 on the grounds of ineffective assistance of counsel "must show both that: (1) counsel's representation fell below an objective standard of 'reasonableness under prevailing professional norms'; and (2) the defendant suffered prejudice as a result – that is, there is a reasonable probability that, but for the counsel's deficient performance, the result of the proceeding would have been different." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. According to the Third Circuit:

> In reviewing counsel's performance, [a court] must be highly deferential. [A court] must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. Moreover, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Sistrunk, 96 F.3d at 670 (citing Strickland, 466 U.S. at 689-90) (internal quotation marks and citations omitted). "It is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in

scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997) (quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

5. The Supreme Court has applied these same standards in the context of challenges to guilty pleas that are based on ineffective assistance of counsel. See Hill v. Lockhart, 474 U.S. 52 (1985). Therefore, in order to show that his counsel's actions rose to such a level as to constitute ineffective assistance of counsel, Petitioner must show not only that his counsel's performance was constitutionally ineffective, but also that he was prejudiced by the performance. Petitioner cannot do so.

6. As discussed, the Court has found that, contrary to Petitioner's claims, his counsel did not advise him that the motion to suppress wiretap evidence had been denied prior to his guilty plea. Moreover, Petitioner did not ask about the disposition of the motion, nor was it part of his decision to change his plea to guilty. There was, accordingly, no ineffectiveness in this regard.

7. Nor was counsel ineffective in advising Petitioner to plead guilty, rather than to await the disposition of the suppression motion. As discussed, issues other than the motion were far more significant in regard to Petitioner's decision. A second prior conviction for a felony drug offense would have subjected Petitioner to a mandatory life sentence pursuant to 21

12

U.S.C. § 841(b)(1)(A) had he been convicted, and, as stated above, Petitioner did, indeed, have a second such conviction. Pursuant to the plea agreement negotiated by counsel, however, the Section 851 information listed only one prior conviction, allowing for a mandatory minimum sentence of 20 years' imprisonment rather than life. Even without the evidence obtained pursuant to the Wiretap Application, the Government had evidence to establish that Petitioner was guilty of participating in a conspiracy to distribute five kilograms or more of cocaine, which would have subjected him to the mandatory term of life imprisonment. Indeed, there was evidence prior to the Wiretap Application attributing 8-20 kilograms of cocaine directly to Petitioner. This was established by the summary of evidence at Petitioner's change of plea hearing, to which he agreed (Doc. No. 179, Ex. 1 at 15-18), and by the affidavit of probable cause for the Wiretap Application. (Doc. No. 59, Ex. 1 at 24-26).

8. Moreover, even if the Government could only establish a lesser drug quantity, Petitioner still would have, at best, been subject to a term of imprisonment of not more than 30 years pursuant to 21 U.S.C. § 841(b)(1)(C), based on his prior controlled substance conviction. Further, Petitioner may have been subject to further charges of possession of a firearm in furtherance of a drug-trafficking crime, the first count of which would have carried a mandatory 5-year sentence, and the second of

which would have carried a mandatory 15-year sentence, both to be served consecutive to any other term of imprisonment, pursuant to 18 U.S.C. §§ 924(c)(1)(A)(i) and (C)(i). See United States v. Walker, 473 F.3d 71, 75 n.1 (3d Cir. 2007)(citing Deal v. United States, 508 U.S. 129, 131-34 (1993))(stating that if a defendant is sentenced for a second or subsequent conviction of Section 924(c), the mandatory minimum term of imprisonment is 25 years pursuant to Section 924(c)(1)(C)(i), even if the second or subsequent conviction is for a count charged in the same indictment as the initial violation of Section 924(c)). See also United States v. Ali, 384 Fed. Appx. 165 (3d Cir. 2010). Indeed, counsel seemed to believe that the Government could "tie" two firearms to Petitioner, which would have resulted in a 30-year mandatory sentence to be served consecutive to any sentence imposed on the conspiracy charge.

9. Accordingly, the risks associated with proceeding to trial were very significant, and counsel adequately conveyed these risks to Petitioner. Further, counsel's advice to accept the Government's proffered plea agreement, which was of great benefit to Petitioner, as opposed to pursuing the suppression motion and going to trial was more than reasonable given the fact that Petitioner never indicated that the resolution of the suppression motion was particularly significant to his decision to plead guilty. As such, counsel's advice, by any standard of

14

reasonableness, constituted sound strategy, and his performance
was not constitutionally ineffective.

10. Petitioner's argument, beyond the argument that his
counsel misrepresented the status of the suppression motion,
basically just re-iterates some of the arguments made in that
motion. He does not, and of course cannot, argue that his counsel
failed to consider the arguments contained in the motion, and the
merits of these arguments, before advising him to plead guilty, as
his counsel had joined the motion on Petitioner's behalf. Both
counsel and Petitioner were aware of these arguments when
Petitioner decided to plead guilty. Petitioner does not really
argue that counsel misled him as to the nature or merits of the
suppression motion arguments prior to pleading guilty, but, in any
event, any such argument is precluded by the fact that the
resolution of the suppression motion was not a factor that
Petitioner raised with counsel in discussing his decision to plead
guilty.

11. Petitioner cannot now merely claim that there may have
been merit in some of the arguments he chose not to pursue; he
would have to demonstrate that counsel was somehow
constitutionally ineffective in advising him to plead guilty
rather than to pursue the suppression motion and proceed to trial.
Petitioner received substantial benefits from entering into a plea
agreement, and, as discussed, he faced a significant risk of

conviction and a much larger sentence than he ultimately received even if he had prevailed on the suppression motion. Petitioner must show that it was objectively unreasonable for counsel to have advised him to take the deal and avoid the substantial risk of trial rather than to pursue the arguments raised in the suppression motion and proceed to trial in light of these circumstances. The Court finds that none of the issues raised in that motion were particularly likely to result in the suppression of evidence obtained pursuant to the Wiretap Application at all and none, certainly, were so obviously meritorious and beneficial to Petitioner that advising Petitioner to forego the motion and take the plea deal could be deemed to have been ineffective.

12. While the suppression motion raised several arguments, Petitioner focuses primarily on two. One of these, Petitioner's argument that the Wiretap Application failed to properly identify the person authorizing the application, in violation of 18 U.S.C. § 2518(1)(a), does require some discussion. As discussed above, the Ninth Circuit Court of Appeals issued an opinion two years after Petitioner's decision to plead guilty upholding the suppression of the wiretap evidence in the factually analogous case involving Jeremy Staffeldt and Jay Smith. Petitioner's argument as to Section 2518(1)(a) is based primarily on this decision, as he essentially argues that his case would have been resolved in the same manner as was the sister case in the Ninth

16

Circuit. However, there was no particular reason to assume the outcome of Staffeldt's case at the time of Petitioner's plea decision. "[I]n making litigation decisions, there is no general duty on the part of defense counsel to anticipate changes in the law." Sistrunk, 96 F.3d at 670-71 (3d Cir. 1996). Counsel obviously could not have known that the Ninth Circuit would issue such a ruling while advising Petitioner, and, therefore, had no reason to think that the granting of the motion was particularly likely.

13. Further, even if counsel could have known what the Ninth Circuit would do years later while advising Petitioner, there was no basis for assuming that this case would be resolved in the same manner as that one because there are important factors distinguishing this case from Staffeldt. In Staffeldt, the application did not name the person who approved the application, but merely stated in general terms that an authorized official had given approval and referred to the attached authorizing memorandum. See id. at 581. In this case, even though the wrong authorization letter was attached, the Wiretap Application indicates on its face that it was approved by DAAG Malcolm, which was indeed the case. This distinction is significant.

14. Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III") provides that "[e]ach application [for a wiretap authorization order] shall include...the identity...of the

officer authorizing the application." 18 U.S.C. § 2518(1)(a).
Only a specified list of United States Justice Department
officials may authorize the application, including Deputy
Assistant Attorney Generals in the Criminal Division who have been
specially designated by the Attorney General. See 18 U.S.C. §
2516(1). Evidence obtained through a wiretap may be suppressed if
the order of authorization is insufficient on its face. See 18
U.S.C. § 2518(10)(a)(ii).

15. The Third Circuit has held that "suppression . . . is
not required for every technical violation [of Title III]." It is
warranted "[o]nly where there is failure to satisfy any of those
statutory requirements that directly and substantially implement
the congressional intention to limit the use of intercept
procedures." United States v. Acon, 513 F.2d 513, 517 (3d Cir.
1975) (citing United States v. Chavez, 416 U.S. 562 (1974), and
United States v. Giordano, 416 U.S. 505 (1974)) (internal
quotation marks omitted). On multiple occasions, the Third
Circuit has held that suppression was unwarranted based on minor
errors regarding the identity of the authorizing officer. See,
e.g., Acon, 513 F.2d at 517-19 (appropriate officer had approved
wiretap application, but a different officer not authorized to
approve the application signed the approval memorandum); United
States v. Traitz, 871 F.2d 368, 378-80 (3d Cir. 1989) (wiretap
application and order failed to identify by name the authorizing

18

officer).

16.  The Ninth Circuit's decision was based in large part on
the absence of any identification of an authorizing person on the
application in that case.  The court found that the facial
insufficiency of the application precluded the reviewing court
from determining whether there had even been Justice Department
authorization, which the court found to be a "critical
precondition" to the approval of a wiretap application.
Staffeldt, 451 F.3d at 583-84.  As mentioned, here, the Wiretap
Application did, in fact, identify the proper authorizing officer
and was not insufficient on its face.  While the wrong
authorization memorandum was attached, attachment of the
memorandum was not required by the statute.  The memorandum was,
therefore, merely gratuitous in this case.  This case, therefore,
did not involve the same issue of facial insufficiency that was
involved in Staffeldt.

17.  Of course, counsel's advice was likely not based on
knowledge of this distinction, given the fact that the Staffeldt
decision had not yet been issued.  However, in any event, the
state of the law in 2004 would have given counsel every reason to
question the merits of the motion to suppress evidence obtained
pursuant to the Wiretap Application on grounds that the
application violated Section 2518(1)(a).  As discussed above,
decisions such as Acon and Traitz made it reasonable to assume

19

that the mistake in this case, which entailed attaching the wrong authorization memorandum, would constitute the type of technical violation where suppression was unwarranted. This is particularly true considering that the error did not involve the application itself, but rather the supporting attachment, since "section 2518(1)(a) does not require any particular documentation." United States v. Vento, 533 F.2d 838, 860 (3d Cir. 1976).

18. In sum, because the Staffeldt decision had not yet been rendered and because, even if it had been, there are crucial factual distinctions between that case and the present one, and because the state of the law in the Third Circuit in 2004 supported an inference that suppression was unlikely, it cannot be said that Attorney Schorr's representation fell short of an objectively reasonable standard of competence in advising Petitioner to accept a very beneficial plea agreement and plead guilty rather than to proceed with the motion on grounds of the incorrect authorization memorandum.[2]

19. At least this first argument is based on a decision favorable to Petitioner in a similar case based on similar facts.

---

[2] The Court notes that Petitioner also challenges the validity of the order authorizing the wiretap pursuant to 18 U.S.C. § 2518(4)(d). Of course, the order itself does not suffer from the same error as the application, as there is no incorrect attachment. Further, Petitioner's argument that the order is insufficient for failing to name the authorizing officer is precluded by Traitz. See 871 F.2d at 378-80.

There is nothing in the record to indicate that there is any particular merit in the other arguments raised in the suppression motion. Petitioner focuses on the argument in the motion that the affidavit in support of the Wiretap Application failed to establish that other investigative procedures had been tried and failed or reasonably appeared to be unlikely to succeed if tried or to be too dangerous, pursuant to 18 U.S.C. § 2518(1)(c). Petitioner does not establish why his counsel should have believed that this argument was likely to prevail, but, rather, merely restates the arguments made in the motion which he chose not to pursue. As discussed, the Court has found that Petitioner at no time prior to his guilty plea indicated that the resolution of this motion was material in his decision to plead. Moreover, there is nothing in the record to suggest that this argument was so meritorious and of such benefit to Petitioner that it was unreasonable for counsel to have advised him to forego the argument, especially in light of the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Accordingly, there is no basis for finding counsel ineffective based on this argument.

20. Therefore, Petitioner has failed to establish the first prong of the Strickland standard. Counsel's advice that Petitioner enter into a very beneficial plea agreement and avoid the risk of a potential life sentence by abandoning the

suppression motion was more than reasonable under the circumstances of this case.

21. Nonetheless, even if Petitioner could prove ineffectiveness, the Court finds that Petitioner was not prejudiced by any deficient conduct by counsel. The Court likely would not have granted the suppression motion anyway, and it appears that there was a substantial likelihood that pursuing the motion would have cost Petitioner the benefits of the plea agreement he reached with the Government. He would have faced substantial evidence against him at trial and likely would have been convicted. His sentence, under such circumstances, would have been much longer.

22. The Court has already explained why there is no merit in Petitioner's claim regarding Section 2518(1)(a) despite the mistaken attachment to the Wiretap Application.[3] Likewise, there is no merit in Petitioner's Section 2518(1)(c) claims. Courts have adopted a "pragmatic" approach to 2518(1)(c)'s necessity requirement. Vento, 533 F.2d at 849. In establishing necessity,

---

[3] It should be noted that the Third Circuit continues to rely on cases such as Acon and Traitz in holding that the federal wiretap statutes "do[] not require suppression if the facial insufficiency of the wiretap order is no more than a technical defect." United States v. Mainor, 393 Fed. Appx. 10, 15 (3d Cir. 2010). If an application that is insufficient on its face for a mere technical error does not warrant suppression, the technical error of attaching the wrong supporting memorandum to a facially accurate application certainly does not.

there is no requirement that every investigative methodology be exhausted prior to an application under Section 2518 for an order authorizing a wiretap. See id. Although an affidavit in support of a wiretap application must contain a full and complete statement as to whether or not investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous, "[t]he government need only lay a 'factual predicate' sufficient to inform the judge why other methods of investigation are not sufficient." United States v. McGlory, 968 F.2d 309, 345 (3d Cir. 1992). General or conclusory statements and boilerplate language are insufficient to support an application. See Vento, 533 F.2d at 849-50.

23. The affidavit by Officer Patrick Kinavey in support of the Wiretap Application sufficiently summarized how various other methods of investigation had been tried and how those methods either failed or would not have provided the information which the application sought to obtain. The purpose of the Wiretap Application was to obtain evidence regarding the manner and means of the commission of the charged offenses, which included a large scale cocaine and heroin trafficking organization in and around Pittsburgh over a number of years, including the full scope and extent of each individual's involvement in those offenses and the identity of other participants in the conspiracy. In the proper circumstances, the instrumentalities of Title III may be employed

to discover the full extent of crimes and conspiracies.  See
Vento, 533 F.2d at 850.  Such is the case here.

24.  Moreover, the affidavit in support detailed several
investigative techniques that were available and how these were of
limited effectiveness due to the size and structure of the wide-
ranging conspiracy.  It further explained specifically the type of
information sought that these techniques could not produce.  It
discussed the risks that certain other techniques, such as search
warrants, would present to the ongoing viability of the
investigation.  Although the affidavit failed to mention that the
"reverse sting" operation cited by Petitioner had concluded, it
did explain why that technique was not sufficient to conduct a
complete investigation into the factors set forth above.
Specifically, the affidavit explained that arresting Petitioner
and others in the course of the reverse sting would not allow
authorities to identify the individuals for whom they were
negotiating.  That the operation had already concluded did not
change this analysis.  Under the facts of this case, the Court
would not have granted the suppression motion on this ground had
it been pursued.[4]

---

[4]     Petitioner does not present any argument in support of the
other arguments raised in the suppression motion, and the Court
will not discuss them in detail.  Suffice to say, the Court finds
that none of these other arguments were of such merit and benefit
that counsel was ineffective in advising Petitioner to accept the
plea agreement, and none likely would have resulted in the

25.  Therefore, there is no reasonable probability that, but for any assumed deficient performance on behalf of Petitioner's counsel, the result of the proceeding would have changed to Petitioner's benefit.

## III. **Conclusion**

Based on these findings of fact and conclusions of law, the Court will deny Petitioner's motion in its entirety.  Further, this Court will not issue a certificate of appealability in this case. A certificate of appealability may issue under 28 U.S.C. § 2255 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth above, Petitioner has not made a substantial showing of the denial of a constitutional right and a certificate of appealability should not issue in this action.

An appropriate Order will be issued.

> s/Alan N. Bloch
> United States District Judge

ecf:    Counsel of record

cc:     Antonio Stitt
        #06262-068
        USP Pollock
        P.O. Box 2099
        Pollock, LA   71467

---

suppression of evidence in any event.